J-A24011-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| M.L.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A.G.Q. | : | |
| | : | |
| Appellant | : | No. 1361 EDA 2019 |

Appeal from the Order Entered April 8, 2019
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
2013-FC-1270

BEFORE:    BENDER, P.J.E., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED DECEMBER 19, 2019**

A.G.Q. (Father) appeals from the order, dated April 5, 2019, and entered on April 8, 2019, that found both Father and M.L.B. (Mother) in contempt of the May 18, 2018 order concerning the custody of I.S.Q. (Child), the parties' daughter, who was born in June of 2008.  Father's appeal is also directed at the modification of the May 18, 2018 custody order as contained in the April 8, 2019 order.  After review, we affirm.

Father sets forth an accurate statement of the history of this case in his brief, as follows:

> The first Order in this case was entered on March 19, 2014, based upon an agreement of the parties.  That Order provided for shared legal custody with primary physical custody with Mother and Father having partial periods of physical custody.  At the time the Order was entered, Father was enlisted in the United States

_____

[*] Retired Senior Judge assigned to the Superior Court.

Army and stationed in Ft. Stewart, Georgia, while Mother and the minor [C]hild lived in Lehigh County, Pennsylvania.

Upon his discharge from the United States Army, Father filed a Petition for Modification on April 20, 2018. In his Petition, Father asserted that he had been discharged from the Army and was then residing with his mother in Lehigh County, Pennsylvania. The Petition for Modification requested joint physical custody of the minor [C]hild. The matter was conferenced before a Custody Hearing Officer in Lehigh County and an Agreed Order was entered on May 18, 2018[,] maintaining shared legal custody but granting Father expanded periods of partial custody, including shared physical custody in the summer months.

On July 2, 2018, Father filed a Petition for Contempt and a separate Petition for Modification.[1] In his Petition for Contempt, Father alleged that Mother had denied him partial physical custody pursuant to the Order; that Mother had failed to notify him of a motor vehicle accident; that Mother denied him daily telephone contact as set forth in the Order; and, that Mother was failing to take the [C]hild to daycare as required in the underlying Order.

Father's Petition for Modification requested primary physical custody of the minor [C]hild on the basis that Mother has continuously and habitually interfered with Father's contact with the minor [C]hild; that the [C]hild had missed substantial days from school between January 2018 and June 7, 2018; that the [C]hild had missed substantial time from daycare despite the Order requiring the [C]hild to attend daycare; and, alleging Mother's alienation of the [C]hild towards Father.

The matter was once again conferenced with the Custody Hearing Officer in Lehigh County. The matter could not be resolved, as a result of which by the Order of September 14, 2018, the Honorable J. Brian Johnson was assigned to the within matter.

The parties attended a pretrial conference on October 25, 2018. During the pretrial conference, Father took the position that he would accept a shared physical custody arrangement with the [C]hild. Counsel informed the [c]ourt that they believed the matter could be resolved by agreement without the necessity of

_____

[1] On August 15, 2018, Mother also filed a petition for contempt against Father.

trial. A trial was scheduled for November 28, 2018. Unfortunately, the matter had to be continued as a result of Mother['s] delivering a new child with her current husband. Accordingly, the trial was continued to March 6, 2019.

Father filed a Petition for Emergency Relief on December 11, 2018, after discovering that Mother had moved and changed the [C]hild's school district without any notification to Father and failed to list Father on the registration paperwork. That matter was scheduled for a hearing before the Honorable J. Brian Johnson on December 20, 2018. At that time, after a hearing, the [c]ourt denied and dismissed Father's Petition but indicated that it would take the matter into consideration in the overall custody disposition presently pending before the [c]ourt and would incorporate the transcript into the record at the custody trial.

The parties appeared for trial on March 6, 2019[,] but were unable to conclude the matter at that time and a second hearing was scheduled for April 1, 2019. The [c]ourt entered an Order on April [8], 2019,[2] adjudicating both parties in contempt of the May 18, 2018 Order and directing both parties to pay $500.00 in fines to the [c]ourt within thirty days. The trial court also modified the May 18, 2018 Order to provide Father with an additional dinner visit on Tuesdays from 4:30 p.m. to 8:30 p.m., as well as award Father every Veteran's Day.

Father filed a Notice of Appeal on May 6, 2019, along with a Statement of Matters Complained Of [on Appeal]. *After the Superior Court appeal was filed, the [c]ourt entered an Order on May 7, 2019, vacating its April [8], 2019 Order.*

Father's brief at 20-24 (emphasis added).

Mother's brief appears to accept Father's statement of the case. She

only adds that:

On July 2, 2019[,] the trial court issued a Final Custody order, replacing the Order dated April 5, 2019, [and entered April 8, 2019,] which the trial court [had] vacated *sua sponte* on May 7,

---

[2] The order entered on April 8, 2019, was dated April 5, 2019, and is the order from which Father filed his appeal.

- 3 -

2019. The July 2, 2019 Order is, other than the date of entry, a *verbatim* restatement of the April 5, 2019 Order.

Mother's brief at 5 (citations to the record omitted).

Our review recognizes that the trial court attaches a portion of the transcript from the custody trial to its April 8, 2019 order, wherein the court announced its decision from the bench. Essentially, the notes of testimony contain the court's review of the custody factors listed at 23 Pa.C.S. § 5328(a)(1)–(16). Moreover, we note that in its Pa.R.A.P. 1925(a) Statement, the trial court suggests that because it vacated the April 8, 2019 order now on appeal by entering its May 7, 2019 order, the appeal before us should be quashed as moot. We disagree because the trial court did not have jurisdiction to enter its May 7, 2019 order after Father filed an appeal. ***See*** 42 Pa.C.S. § 5505. That statute states:

> Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.

42 Pa.C.S. § 5505. ***See also Manufacturers and Traders Trust Co. v. Greenville***, 108 A.3d 913, 918 (Pa. Super. 2015) (stating "[i]f no appeal is filed, a court may, under § 5505, rescind or modify a final order if it gives notice to the parties"). Because Father filed his appeal from the April 8, 2019 order on May 6, 2019, after May 6, 2019, the trial court did not have jurisdiction to vacate the April 8, 2019 order. Accordingly, the April 8, 2019

order remains as a final order and Father's appeal from that order is properly before us in this appeal.

On appeal, Father raises the following issues for our review:

A. DID THE TRIAL COURT ERR AND ABUSE ITS DISCRETION IN FAILING TO AWARD [FATHER] SHARED PHYSICAL CUSTODY OF THE MINOR CHILD BASED ON STATUTORY FACTORS ENUMERATED IN 23 Pa.C.S.[] § 5328 AND IN PARTICULAR[] FAILING TO ADEQUATELY ANALYZE FACTOR #1?

B. DID THE TRIAL COURT ERR AND ABUSE ITS DISCRETION IN DETERMINING FACTOR #2 IN MOTHER'S FAVOR?

C. DID THE TRIAL COURT ERR AND ABUSE ITS DISCRETION IN DETERMINING THAT FACTOR #3 WEIGHED IN MOTHER'S FAVOR AS SHE HAD BEEN THE PRIMARY CAREGIVER?

D. DID THE TRIAL COURT ERR AND ABUSE ITS DISCRETION IN FINDING THAT FACTOR #4, STABILITY AND CONTINUITY IN THE CHILD'S EDUCATION, FAMILY LIFE AND COMMUNITY, WERE EVEN BETWEEN THE PARTIES?

E. DID THE TRIAL COURT ERR AND ABUSE ITS DISCRETION IN DETERMINING FACTOR #7 IN NOT AFFORDING THE CHILD'S TESTIMONY SIGNIFICANT WEIGHT IN ITS AWARD OF CUSTODY?

F. DID THE TRIAL COURT ERR AND ABUSE ITS DISCRETION WHEN ADDRESSING FACTOR #10 AND STAT[ING] "WHILE BOTH PARTIES APPEAR TO BE ABLE TO ATTEND TO THESE NEEDS, GIVEN THE FACT THAT THE CHILD IS A GIRL AND IS APPROACHING PUBERTY, MOTHER WOULD BE MORE LIKELY TO BE ABLE TO ASSIST THE CHILD IN GOING THROUGH THAT TIME OF HER LIFE. SO THIS FACTOR WOULD FAVOR MOTHER"?

G. DID THE TRIAL COURT ERR AND ABUSE ITS DISCRETION IN FINDING FATHER IN CONTEMPT?

Father's brief at 18-19.

The scope and standard of review in custody matters is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.

*M.J.M. v. M.L.G.*, 63 A.3d 331, 334 (Pa. Super. 2013) (quoting *J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa. Super. 2011) (citation omitted)).

"[W]hen making a custody award, '[t]he court shall delineate the reasons for its decision on the record in open court or in a written opinion or order.'" *Id.* at 335. The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S. § 5328(a), which provides as follows:

**(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused

- 6 -

party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

As noted above, attached to the April 8, 2019 custody order, the court included the transcript of its recitation of the facts of the case as they relate to the various factors. The court found that factors (1), (4), (6), (8), (9), (11), (12), (13), (14), (15), and (16) favored neither party or were even. The court found that factor (5) favored Father, while factors (2), (3), (7), and (10) favored Mother. Specifically, with regard to these five factors, the court stated:

> 2. The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the Child or an abused party and which party can better provide adequate physical safeguards and supervision of the Child. (Includes criminal convictions under 23 P.S. § 5303.) See Exhibits A and B. The parties both testified about an incident in Alaska in 2010 or 2011, in which Mother says Father grabbed her by the neck and lifted her off the ground. Father did not describe the incident, but rather said that an argument "snowballed." We find Mother credible on this. This factor favors Mother.
>
> 3. The parental duties performed by each party on behalf of the Child. Primary caregiver. Past and present possession of the Child. The Child has virtually always lived with Mother and Mother has cared for her continuously. It is not good that the Child has missed so many days from school, but this is not enough to disturb the fact that Mother has been the primary caregiver. Thus, this factor favors Mother.

. . .

- 8 -

5. The availability of extended family. Father testified his mother lives a quarter of a mile from him and, indeed, his mother testified to the same. Mother has no family in Pennsylvania. Therefore, this factor favors Father.

. . .

7. The well-reasoned preference of the Child, based on the Child's maturity and judgment. The [c]ourt interviewed the Child and she indicated that she liked it at both Mother's house and Father's house and that she would like to spend some more time at Father's house. Father teaches the mixed martial arts class she takes on Tuesdays and the Child would like to have a period of custody with him that evening. When the [c]ourt discussed the various custody options with her, she expressed that her favorite options were the additional Tuesday or week on, week off after the [c]ourt mentioned the week on, week off as a possibility. This factor favors Mother or shared physical custody.

. . .

10. Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the Child? (including religious training and doctor visits). While both parties appear to be able to attend to these needs, given the fact that the Child is a girl and is approaching puberty, Mother would be more likely to be able to assist the Child in going through that time of her life. So this factor would favor Mother.

N.T. Trial, 4/1/19, at 2-6 (attached to the April 8, 2019 trial court order). In light of the issues Father raises, we also include the court's discussion relating to factors (1) and (4), which the court determined were even.

1. Which party is more likely to encourage and permit frequent and continuing contact between the Child and another party? Both parties indicate that they are willing and able to do this. We find this factor is even.

. . .

4. The need for stability and continuity in the Child's education, family life and community life. (Stability re: Significant others,

meretricious relationships.)  Stability includes physical aspects of the residences of the parties and ability of the parties to financially provide for the Child.  The Child is almost 11 years old.  Her stability with regard to education is already questionable.  She was going to school in Southern Lehigh based upon the lie of Paternal Grandmother and Mother when they signed a document telling the School District that the Child lived with the Paternal Grandmother in Southern Lehigh when she did not.  It appears that Father knew this because he allowed it [to] continue.  One of his arguments is that Mother did not give him a chance to register the Child with his home in Southern Lehigh.  If the Child were not living primarily with him, this would still be a lie.  The Child's education is already disturbed; she has already moved to Parkland because that is where Mother lives.  If we awarded primary custody to Father, she would go back to Southern Lehigh; yet another change.  As to the stability and continuity of the Child's family life, that does not seem to change very much whether she lives with Mother or Father.  As to her community life, there is no particular evidence of community involvement.  Both homes appear to be sufficient.  Both parties appear to be financially able to support the Child.  So, on balance, this factor appears to be even.

*Id.*

Now we turn to the first six issues raised by Father in his brief, wherein he sets forth his disagreement with the trial court's conclusions as to those factors that either favor Mother or that he claims should have favored him rather than being considered equal.  Father contends with regard to factor (1) that the court did not adequately analyze this factor.  Specifically, Father identifies his testimony in which he claimed that Mother initially agreed to several of Father's requests for additional time for Child to visit various members of his family, but that Mother reneged when that time arrived.  Father also points to testimony in which he claimed that he received little or no information about Child's medical and dental health or about Child's

- 10 -

schooling. He also asserts that although Child and Paternal Grandmother had a close relationship, Mother curtailed those visits following his discharge from the army. Father indicates that Mother did not rebut most of his testimony but acknowledged that he had agreed that Mother could take Child to Columbia in the summer of 2016 to visit Mother's family. Essentially, Father contends that the court ignored this testimony, finding this factor to be even, and as a result abused its discretion.

As for factor (2) relating to the Alaska incident in 2010 or 2011, Father contends that no additional incidents occurred, that the parties agreed to periods of expanded custody for Father, and that Mother testified that she had no concerns about Father. Additionally, to support this argument, Father relies on *Michael T.L. v. Marilyn J.L.*, 525 A.2d 414, 418 (Pa. Super. 1987), wherein this Court stated "[c]ustody cannot reasonably be granted on the basis of a parent's unsettled past unless the past behavior has an on-going negative effect on the child's welfare…. Moreover, the ability to care for the child is to be determined as of the time of the custody hearing." Accordingly, Father asserts that this factor should not have favored Mother in that the incident occurred seven or eight years ago and Child was not even present.

Regarding factor (3), Father takes issue with the trial court's determination that Mother has always been the primary caretaker of Child. Rather, he contends that Child spent a considerable amount of time with Paternal Grandmother and had a close relationship with her. Furthermore, Father relies on this Court's recognition that no additional consideration should

be placed on which parent has been the primary caregiver. **_See M.J.M._**, 63 A.3d at 330.

As for factor (4), the court explained Child's change in her school attendance at two different school districts. Father claims he was unaware of this change until after the fact and that it was not in Child's best interest to have been moved in the middle of the school year. Thus, Father asserts that Mother's actions showed her lack of a willingness to co-parent with Father.

Next, Father's argument relating to Factor (7) centers on Child's testimony about her desire to spend time with each parent. Father argues that the court did not afford significant weight to Child's testimony and failed to recognize that Child's testimony repeated much of what Mother stated. Again, Father claims that the court did not give proper weight to Child's testimony even after the judge suggested a shared custody arrangement, which Child appeared to favor.

Concerning factor (10), Father takes issue with the court's reliance on the fact that Child is a girl approaching the age of puberty and would more likely benefit from living primarily with Mother. He contends that Child has a good relationship with his current wife and Paternal Grandmother, both of whom could aid Child in dealing with this issue.

Essentially, Father's arguments center on his contention that many of the factors in section 5328(a) favor him, which is contrary to the trial court's conclusions. In addressing the various factors, Father cites evidence that is most favorable to him. However, based upon our review of the record, we

conclude that the trial court considered all relevant factors. We also note that its findings are supported by the record. Father is basically requesting that we reject the trial court's findings and credibility determinations and accept the findings that he proposes. We cannot do so. Rather, as we stated above,

> [w]e must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first hand.

*J.R.M.*, 33 A.3d at 650. Moreover, we recognize that this must have been a difficult decision for the trial court in that both parents love their Child and wish to provide Child with a good life. As this Court has stated, "the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record." *E.D. v. M.P.*, 33 A.3d 73, 76 (Pa. Super. 2011) (quoting *A.D. v. M.A.B.*, 989 A.2d 32, 35-36 (Pa. Super. 2010)). Because we do not determine that the trial court's conclusions are unreasonable in light of the sustainable facts, we are compelled to affirm the trial court's decision as to Father's first six issues.

In his final issue, Father contends that the trial court abused its discretion in finding him in contempt. As with its discussion of the various custody factors, the court also announced its decision pertinent to both Father's and Mother's petitions for contempt of the May 18, 2018 order. The court stated:

We will first address the Petition For Contempt Of The Order Of Court Entered On May 18, 2018 filed by Mother on August 15, 2018. Mother asserts that, "Father failed to return the [C]hild to Mother at 2:00 p.m. as per Paragraph 5(b) and (c) of the May 18, 2018 Order and instead maintained custody of the [C]hild until the following day." The evidence shows that this is true. Although Father suggested that there was a valid reason related to some activity, he did not adequately prove a valid reason for failing to return the Child to Mother on time. Therefore, he is found to be in contempt of the May 18, 2018 Order and is directed to pay a fine of Five Hundred Dollars ($500.00) within thirty (30) days of the date of this Order.

We will next address the Petition For Contempt Of The Order Dated May 18, 2018 [f]iled [by Father] on January 10, 2019. This petition asserts that "Mother unilaterally, and without notice, removed the [C]hild from the Southern Lehigh School District and enrolled the [C]hild in the Parkland Area School District on November 15, 2018." The evidence unequivocally shows that Mother did this and, therefore, this petition is granted. Mother is found to be in contempt of the May 18, 2018 Order and shall pay a fine of Five Hundred Dollars ($500.00) within thirty (30) days of the date of this Order.

N.T. Trial, 4/1/19, at 1-2 (attached to the April 8, 2019 trial court order).

To address this issue, we are guided by the following standard of review:

This court's review of a civil contempt order is limited to a determination of whether the trial court abused its discretion. If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused.

In order to establish that a party is in civil contempt, there must be proof by a preponderance of the evidence that the contemnor had notice of the specific order that he or she is alleged to have disobeyed, that the act that constituted the contemnor's violation was volitional, and that the contemnor acted with wrongful intent.

***Thompson v. Thompson***, 187 A.3d 259, 263 (Pa. Super. 2018) (quoting ***Cunningham v. Cunningham***, 182 A.3d 464, 470-71 (Pa. Super. 2018)).

Father sets forth his explanation of the facts, contending that there was a misunderstanding as to which parent would be picking up Child from an activity and at what time this would occur. Father states that he attempted to return Child to Mother's residence several times, but Mother was not home. Father also indicates that he attempted to contact Mother on several occasions, but that she did not answer her cell phone. Thus, Father argues that he should not be held in willful non-compliance of the order due to Mother's unavailability. Again, Father is arguing facts; he does not show how the court abused its discretion. He simply argues that the court's credibility determinations were incorrect. As with his earlier arguments directed to our review of the custody factors, Father is requesting that this Court make independent findings rather than accept the trial court's findings that are supported by competent evidence in the record. Our scope of review prohibits this. Thus, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/19/19

- 15 -